Andrée Larose
Robert Farris-Olsen
MORRISON, SHERWOOD, WILSON & DEOLA, PLLP
401 N. Last Chance Gulch
P.O. Box 557
Helena, MT  59624
(406) 442-3261
(406) 443-7294 (fax)
alarose@mswdlaw.com
*Attorneys for Respondents*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | |
|---|---|
| IN RE BUTTE SCHOOL DISTRICT NO. 1 <br><br> This document relates to No. CV-61-BU-SEH | No. CV 14-60-BU-SEH <br><br> **SECOND AMENDED COMPLAINT** |

PRELIMINARY STATEMENT

1.      C.S. is a young adult with multiple disabilities.  Stuart McCarvel is C.S.'s court-appointed educational representative and designated attorney-in-fact. Plaintiffs bring this action to enforce C.S.'s right to a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Act, as

amended in 2004, ("IDEA"), 20 U.S.C. § 1401, *et seq*., and obtain appropriate compensatory remedies for Butte School District No. 1's multiple procedural and substantive violations of the IDEA that deprived C.S. of a FAPE during the 2011-12 and 2012-13 school years.

## PARTIES

1.      C.S. is a young man with multiple disabilities, including autism, mental illness and learning disabilities.  C.S. was born in 1994 and is currently 21 years of age.  C.S. resides with Stuart McCarvel in Butte, Silver Bow County, Montana, within the geographical boundaries of Butte School District No. 1.  C.S. has resided with McCarvel during all relevant times herein, with the exception of a few months in late 2011 and early 2012.  At all relevant times herein, C.S. has been a qualified person with a disability entitled to special education and related services under the IDEA.

2.      Stuart McCarvel brings this action on behalf of himself and on behalf of C.S.  McCarvel is the "parent" of C.S., as that term is defined in the IDEA and its implementing regulations, 20 U.S.C. § 1401(23) and 34 CFR  300.30(a)(2) and (4).  McCarvel has been appointed by the Montana Second Judicial District Court, Silver Bow County, as C.S.'s educational representative with the legal authority to make all educational decisions for C.S., pursuant to 20 U.S.C. §1415(m)(2).  McCarvel's appointment is retroactive to February 22, 2013.  The Order of the

Second Judicial District dated December 15, 2014 and the Amended Order dated February 4, 2015 making said appointment are attached hereto as Exhibits 1 and 2 (with C.S.'s full name redacted, per Court Order dated November 17, 2014, Doc. 8.)

3.     Throughout the entirety of the administrative and judicial proceedings in this matter, Stuart McCarvel also has served as C.S.'s attorney-in-fact to pursue claims and litigation to enforce his educational rights also serves based upon a durable power of attorney executed by C.S. on September 10, 2013, pursuant to Montana's Uniform Power of Attorney Act, Title 72, chapter 31, part 3, C.S.

4.     Defendant Butte School District No. 1 ("District") is governed by a Board of Trustees.  The District is, and has been at all relevant times herein, a school district duly organized and existing under the laws of the State of Montana, located in the city of Butte, Silver Bow County, Montana.  The District is a local educational agency, within the meaning of 20 U.S.C. § 1401(19), 34 CFR § 300.28, responsible for providing a free appropriate public education to C.S.  The District receives federal funds from the U.S. Department of Education.

<u>JURISDICTION and VENUE</u>

5.     This action arises under the laws of the United States.  This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343.  This Court also has jurisdiction pursuant to 20 U.S.C. § 1415(i) of the IDEA.

6.     Venue in the Butte Division is proper, as the Plaintiffs have resided in Silver Bow County at all relevant times herein and Defendant School District is located in Silver Bow County.

## PROCEDURAL HISTORY

7.     On October 3, 2013, C.S. and McCarvel requested a special education due process hearing pursuant to the IDEA, 20 U.S.C. § 1415(b)(6) and (f), and its implementing regulations, 34 C.F.R. §§ 300.507 and 300.508, seeking relief for alleged violations of the IDEA.

8.     By Order dated October 16, 2013, the Superintendent of the Montana Office of Public Instruction ("OPI") appointed Lisa Semansky, an attorney who has received training in special education law and procedures by OPI, as the administrative Hearing Officer.

9.     An administrative due process hearing was held pursuant to 20 U.S.C. § 1415 and 34 CFR § 300.511.  On June 11, 2014, the Hearing Officer partially granted and partially rejected Plaintiffs' requests for relief.  [Hearing Officer's Decision – Findings of Fact, Conclusions of Law, and Order dated June 11, 2014 attached hereto as Exhibit 1, hereafter referred to as "DP Ord."].

9.     The Hearing Officer held that the District had denied C.S. a FAPE during the 2011-12 school year, in violation of the IDEA.

10.     The Hearing Officer rejected Plaintiffs' contention that the District denied C.S. a FAPE during the 2012-13 school year.

12.     As a remedy for the District's failure to provide FAPE for the 2011-12 school year, the Hearing Officer ordered the District to provide compensatory education, to consist of certain specified evaluations, specialized instruction and related services beginning no later than July 11, 2014.  The District has not provided any compensatory education ordered by the Hearing Officer.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.     Plaintiffs have exhausted their administrative remedies under 20 U.S.C. § 1415.

FACTUAL ALLEGATIONS

14.     C.S. was enrolled in the District in September 2009 and was graduated from high school at the end of the 2012-13 school year.  At all times during which C.S. was a student in the District, he has been identified as a student with a qualifying disability under the IDEA entitled to receive a FAPE.  [Ord. at 3, ¶ 2.]

15.     C.S. reached the age of majority in 2012.  At that time, C.S. had not been declared incompetent or incapacitated, and he did not have a guardian.  When a student reaches the age of majority, parental rights under the IDEA transfer to a student who does not have a guardian.  20 U.S.C. § 1415(m), 34 CFR § 300.520.

16.     Because C.S. was not determined incompetent and it was determined that he did not have the ability to provide informed consent with respect to his educational program, the District was required to pursue legal procedures to appoint the parent, or if the parent is not available, another individual to represent his educational interests.  20 U.S.C. § 1415(m), 34 CFR § 300.520(b).

17.     A "parent" is defined in the IDEA as including a foster parent or a person acting in the place of a parent with whom the child lives, or an individual who is legally responsible for the child's welfare.  34 CFR § 300.30(a)(2) and (4). At all relevant times herein, McCarvel has met the definition of parent under the IDEA.

18.     In February 2013, the District sought and obtained appointment of Mary Jo Mahoney as a "surrogate parent" to provide informed consent to C.S.'s educational program.  [Ord. at 13, ¶ 35.]  Although known to the District, Mahoney was a stranger to C.S. and had not been involved in his educational programming in any manner.

19.     At the time of the appointment of Mahoney as surrogate parent in February 2013, C.S. was living with McCarvel, McCarvel was C.S.'s licensed foster parent, and McCarvel was legally responsible for C.S.'s welfare.  McCarvel was actively involved in C.S.'s education, always available for meetings, and a strong advocate for C.S.  [Ord. at 13, ¶ 35.].  All these facts were known to the

District at the time the District sought the appointment of Mahoney as C.S.'s educational representative.

20.     On March 18, 2014, the Montana Supreme Court reversed the state district court's appointment of Mahoney as surrogate parent and found that McCarvel meets the definition of "parent" under the IDEA.  The Supreme Court remanded to the district court to enter an ordering appointing McCarvel as C.S.'s legal representative to make educational decisions under the IDEA.  *In the Matter of C.S.*, 2014 MT 74, ¶ 30.   The Second Judicial District appointed McCarvel to serve as C.S.'s educational representative retroactive to February 22, 2013, and vacated the appointment of Mahoney. [Exhibits 2 and 3, attached].

21.     The failure to timely initiate the appointment of the proper party (McCarvel) as "parent" to represent C.S.'s educational interests is a procedural violation that impeded McCarvel's right of meaningful parental participation in the IEP process.  [Ord. at 25, ¶ 18.]  This procedural violation denied C.S. a FAPE.

22.     As C.S.'s court-appointed educational representative retroactive to February 22, 2013, McCarvel has had and continues to have the authority to pursue enforcement of C.S.'s educational rights under the IDEA.  Because McCarvel is the proper legal representative for C.S. and should have been designated as such initially under the requirements of the IDEA, the Hearing Officer's conclusion that

McCarvel had the authority to pursue a due process hearing on C.S.'s behalf is correct. [*See*, Ord. at 26, ¶ 19.]

23.     On September 10, 2013, pursuant to Montana's Uniform Power of Attorney Act, Title 72, chapter 31, part 3, C.S. executed a durable power of attorney designating Stuart McCarvel as his agent or attorney-in-fact to pursue claims and litigation to enforce his educational rights.  As C.S.'s attorney-in-fact, McCarvel has had and continues to have the authority to pursue claims and litigation to enforce C.S.'s educational rights.

24.     During the 2011-12 and 2012-13 school years, C.S. attended the Crossroads day treatment program operated by the District at Webster-Garfield School.  C.S. has not received education services from the District since his graduation at the end of the 2012-13 school year.

25.     The District evaluated C.S. twice in 2011.  The evaluation in March 2011 identified C.S. as a student with a disability under the IDEA under the categories of Autism and Emotional Disturbance.  The Evaluation Report dated October 4, 2011 retained C.S.'s identification as a student with Autism and Emotional Disturbance.  [Ord. at 6, ¶ 9.]  Neither evaluation identified C.S. with a Specific Learning Disability, although he qualified for that designation as well based on the District's own testing results.

26.     The failure to identify C.S. as a student with a Specific Learning Disability under the IDEA was an error, as the District's own testing showed a severe discrepancy between C.S.'s intellectual ability and his academic achievement, which is the basis for determining a student has a learning disability. The District also failed to conduct necessary follow-up assessments to ascertain C.S.'s particular types of learning deficits so that an appropriate IEP designed to meet his individual needs could be developed.

27.     The 2011 evaluations conducted by the District were not sufficiently comprehensive to identify all of C.S.'s educational needs, including but not limited to the fact that the District failed to adequately assess C.S.'s academic, social, emotional, behavioral and functional living skills and deficits.  The evaluations failed to utilize a sufficient variety of instruments, were not specifically tailored to assess C.S.'s educational needs, and failed to provide adequate information to directly assist the IEP team in determining his specific educational needs and developing an appropriate IEP.  The District's 2011 evaluations did not meet the standard of care for conducting educational evaluations or the requirements for conducting such evaluations under the IDEA.

28.     The IEP team met October 4, 2011 and developed an annual IEP for C.S.  The IEP team also met on other occasions during the duration of the IEP and either discussed or amended the IEP.  None of the IEPs developed, discussed or

revised for the IEP term from October 4, 2011 to October 3, 2012 offered C.S. a

FAPE.  The IEPs were based on flawed evaluations, making it impossible for the

IEP team to develop an appropriate IEP designed to meet C.S.'s needs.

29.     Without evaluative information identifying C.S.'s particular learning

deficits and strengths, the IEP team could not design specific goals in his IEP to

target those deficits, could not design specific instruction approaches that would

enable him to learn despite his learning disability, and could not identify a baseline

to enable the team to develop measurable goals in the targeted academic areas,

among other IEP deficiencies resulting from the flawed evaluations.

30.     The IEPs in effect from October 4, 2011 until October 3, 2012 did not

include required components, including but not limited to Present Levels of

Academic Achievement and Functional Performance (PLAAFP) and measurable

annual goals.  Without adequate PLAAFPs, there was no baseline of C.S.'s

academic achievement and functional performance.  Without a baseline, it is

impossible to develop measurable annual goals.  The IEPs lacked adequate

measurable goals to develop C.S.'s skills in all areas of educational need, including

but not limited to social, behavioral, academic, communication, and independent

living/self-sufficiency realms.  The IEPs did not include special education and

related services and supplementary aids and services based on peer-reviewed

research to the extent feasible to assist C.S. in meeting appropriate goals or otherwise meet his unique needs.

31.    The IEPs in effect during the 2011-12 school year failed to provide adequate transition services, as required by the IDEA.  The District failed to conduct age appropriate transition assessments, including but not limited to a functional vocational assessment, failed to develop appropriate measurable post-secondary goals, and failed to provide appropriate transition services.  [Ord. at 29-30, ¶¶ 30-31.]

32.    C.S. failed to make educational progress during the term of the October 4, 2011 IEP and its amendments.  C.S. did not receive meaningful educational benefit during this time period.

33.    The IEP team met October 3, 2012 and developed an annual IEP for C.S.  The IEP team also met on other occasions during the duration of the IEP and either discussed or amended the IEP.  None of the IEPs developed, discussed or revised for the IEP term beginning October 3, 2012 and continuing through the end of the 2012-13 school year provided C.S. with a FAPE.  The IEPs were based on the same flawed 2011 evaluations, making it impossible for the team to develop an appropriate IEP designed to meet C.S.'s individual needs.

34.    The IEPs in effect for the term beginning October 3, 2012 suffered from the same deficiencies as the previous IEPs.  The IEPs did not include required

components, including but not limited to Present Levels of Academic Achievement and Functional Performance (PLAAFP) and measurable goals. The IEPs lacked adequate measurable goals to develop C.S.'s skills in all areas of educational need, including but not limited to social, behavioral, academic, communication, and independent living/self-sufficiency realms.  The IEPs did not include special education and related services and supplementary aids and services based on peer-reviewed research to the extent feasible to assist C.S. in meeting appropriate goals or otherwise meet his unique needs.

35.     The IEPs in effect during the 2012-13 school year failed to provide adequate transition services.  They were not based upon age appropriate transition assessments, including but not limited to a functional vocational assessment, failed to develop appropriate measurable post-secondary goals, and failed to provide appropriate transition services.

36.     C.S. failed to make adequate educational progress during the term of the October 3, 2012 IEP.  C.S. did not receive meaningful educational benefit during this time period.

37.     C.S. had significant behavioral issues in the school setting throughout the 2011-12 and 2012-13 school years that negatively impacted his learning.

38.     The District did not conduct a valid Functional Behavioral Assessment (FBA) for C.S. during the 2011-12 school year.  [Ord. at 31, ¶ 36.]

39.     The District failed to conduct a valid or adequate FBA during the 2012-13 school year as well.

40.     Without an adequate FBA identifying the function of the behaviors and potential triggers, it was not possible for the District to develop an effective behavior intervention plan to meet C.S.'s individual needs and enable him to participate in and benefit from his education, or to develop an IEP with appropriate behavioral goals.

41.     The District failed to develop appropriate, individualized positive behavioral intervention plans or otherwise provide appropriate programming and supplementary aids and services to meet C.S.'s behavioral needs at any time throughout the 2011-12 and 2012-13 school years.  The District failed to provide any scientifically-based or research-based behavioral instruction, supports or interventions to address C.S.'s behaviors that interfered with learning.  The lack of an appropriate positive behavior intervention plan, adequate behavioral goals in the IEPs, and appropriate special education and supplemental aids and services to address C.S.'s behaviors denied him FAPE for the duration of the 2011-12 and 2012-13 school years.

42.     The District conducted a re-evaluation of C.S. on April 18, 2013, a little over a month prior to his graduation from high school.  This evaluation was not sufficiently comprehensive or specifically tailored to assess C.S.'s individual

academic, behavioral, social, transition and other educational needs.  The evaluation failed to provide adequate information to directly assist the IEP team in determining his educational needs and developing an appropriate IEP for C.S.

43.    Although the District administered intelligence testing and academic achievement testing in April 2013, the District's school psychologist failed to score the data, thus failed to obtain and interpret the evaluative data for the IEP team. This failure deprived the IEP team of important evaluative information, making it impossible for the IEP team to develop an appropriate IEP

44.    C.S.'s expert, Dr. Joseph Gentry, an experienced School Psychologist, Clinical Psychologist and Board Certified Behavior Analyst (BCBA), scored the District's testing based on the raw data obtained.  Dr. Gentry determined that the 2013 testing continued to show a severe discrepancy between C.S.'s intellectual ability and his academic achievement, making C.S. eligible as a student with a Specific Learning Disability.  Again, the District failed to identify C.S. as a student with Specific Learning Disability and failed to conduct necessary follow-up assessments to ascertain C.S.'s particular learning deficits so that an appropriate IEP designed to meet his individual needs could be developed.

45.    As a result of finding that the District deprived C.S. of a FAPE during the 2011-12 school year, the Hearing Officer ordered the District to provide compensatory education consisting of certain evaluations, specialized instruction

and related services within 30 days of the date of the Order dated June 11, 2014. [Ord. at 40 ¶¶ 60-68, and at 42-43].  To date, the District has not provided any of the compensatory education ordered.

46.     Compensatory education is an equitable remedy that seeks to make up for educational services the student should have received, but did not. Compensatory education aims to place the student in the same position he would have occupied but for the District's violations of the IDEA.  Because C.S. has not received compensatory education as ordered by the Hearing Officer, during which time he is getting older, his brain is becoming less malleable and he is likely losing what few skills and what little academic achievement he once had, it is likely that he will need compensatory education that is greater in intensity, duration, and amount than that which would have been appropriate had compensatory education been provided promptly beginning in July 2014 as ordered by the Hearing Officer.

47.     Because of C.S.'s advancing age and transition needs, much of the education required to compensate him for the lack of FAPE during high school will consist of behavioral and vocational development services that are typically and more appropriately delivered in community-based settings, rather than in the high school setting.  It is appropriate for the District to provide the necessary compensatory education by paying the cost of evaluations, instruction and services obtained from qualified providers of McCarvel's choice (private schools, agencies

and/or individual professionals), rather than providing those services directly. The Hearing Officer's Order that the age-appropriate transition assessments be conducted by the Rural Institute on Disabilities and that an FBA be conducted by a qualified professional (Board Certified Behavior Analyst) is appropriate and should be affirmed.

## FIRST CLAIM FOR RELIEF – IDEA

Plaintiffs incorporate by reference all allegations in paragraphs 1 through 47 as though fully set forth herein

48.     C.S. and McCarvel are parties aggrieved by the Due Process Order within the meaning of 20 U.S.C. § 1415(i)(2)(A).

49.     The Hearing Officer erred in concluding the 2011 and 2013 evaluations were appropriate and complied with the requirements of the IDEA, 20 U.S.C. § 1401 *et seq.*, including but not limited to the conclusion that the evaluations adequately assessed C.S. in the social, emotional and behavioral realms.  The Hearing Officer erred in not concluding that the inadequate and flawed evaluations in 2011 and 2013 resulted in a denial of FAPE.

50.     The Hearing Officer erred in not addressing at all the contention, and then not concluding, that the District's failure to fully assess and identify C.S.'s learning disability in the evaluation process and the District's failure to develop

goals and provide special education and supplementary aids and services to address

C.S.'s learning disability was a denial of FAPE, in violation of the IDEA, 20

U.S.C. § 1401 *et seq.*

51.     The Hearing Officer erred in concluding that the IEPs, evaluations,

assessments and behavior intervention programs that were implemented during the

2012-13 school year were appropriate and afforded C.S. educational benefit.  This

error includes, but is not limited to, the Hearing Officer's specific determinations

that any Functional Behavior Assessment ("FBA") conducted during that time

period was valid or appropriate, that the IEPs adequately met C.S.'s individual

needs in all educational areas, including transition needs, and that the partial

behavior intervention plan developed on October 3, 2012 was appropriate and met

C.S.'s needs.  The Hearing Officer's conclusions in these regards are not supported

by the evidence.  To the contrary, the reliable evidence is overwhelming that the

evaluations, behavioral assessments, behavior intervention programs and IEPs that

were implemented during the 2012-13 school year did not meet C.S.'s individual

needs, did not comport with the standard of care, and did not comply with the

requirements of the IDEA, resulting in a denial of FAPE for that school year.

52.     The Hearing Officer correctly found that the failure to appoint

McCarvel as the legal representative for C.S. in February 2013 impeded

McCarvel's right of meaningful parental participation, but erred in concluding that

this violation did not result in a denial of FAPE.  The District's appointment of a

stranger as C.S.'s "surrogate parent," rather than appointing McCarvel, his legally

recognized parent, was a deliberate act directly contrary to explicit law, as set forth

in 20 U.S.C. §1415(m)(2).  It was an egregious procedural violation that

significantly impeded McCarvel's opportunity as C.S.'s parent to participate in the

decision-making process regarding the provision of FAPE, impeded C.S.'s right to

a FAPE, and deprived C.S. of educational benefits and opportunities, all of which

results in a substantive denial of FAPE. 20 U.S.C. § 1415(f)(3)(E); *W.G. v. Bd. of

Trustees of Target Range Sch. Dist.,* 960 F.2d 1479, 1484 (Procedural inadequacies

that result in the loss of educational opportunity or seriously infringe the parents'

opportunity to participate in the IEP formulation process clearly result in the denial

of FAPE).

53.     The District's deliberate disregard of the explicit requirement in the

IDEA for appointment of the parent as educational representative for an adult

student unable to give informed consent unreasonably protracted this litigation and

caused C.S. and McCarvel to incur additional attorney's fees and costs that would

not have been incurred but for the District's unlawful act.

54.     The Hearing Officer erred in ordering compensatory education for

only one year of denial of FAPE, rather than ordering compensatory education

sufficient to compensate for C.S.'s denial of FAPE for a period of two school

years.  As properly conducted evaluations may constitute part of a compensatory education remedy, the Hearing Officer erred in not ordering a comprehensive evaluation in the areas of academic, social, behavioral, emotional, speech and language or communication needs, to include psycho-educational assessments for ascertaining C.S.'s specific learning disabilities and skill deficits.  The only assessments the Hearing Officer ordered were age-appropriate transition assessments and an FBA.

55.    The Hearing Officer erred in not ordering the District to pay for special education and related services based on peer-reviewed research for the full time period necessary to overcome the denial of FAPE, which at a minimum should have been 335 days, but which will be greater as C.S. continues to receive no compensatory education during the duration of this litigation.

56.    The IDEA, 20 U.S.C. §1415(i)(3), provides for the award of reasonable attorney's fees to a prevailing party who is the parent or legal representative of a child with a disability in any action or proceeding brought under that section of the IDEA.  Having succeeded on significant issues in this matter, Plaintiffs are the prevailing party entitled to recover their full attorney's fees and costs in an amount to be calculated.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.      Declare that Butte School District No. 1 denied C.S. FAPE, in violation of the IDEA, 20 U.S.C. § 1401 *et seq.*, by failing to conduct appropriate evaluations in 2011 and 2013 that comply with the requirements of the IDEA;

2.      Declare that the District denied C.S. FAPE, in violation of the IDEA, 20 U.S.C. § 1401 *et seq.*, by failing to develop and implement IEPs reasonably calculated to meet C.S.'s individual needs and provide him meaningful educational benefit during the 2012-13 school year;

3.      Declare that the District denied C.S. FAPE, in violation of the IDEA, 20 U.S.C. § 1401 *et seq.*, by failing to conduct appropriate functional behavior assessments and provide appropriate behavioral instruction, interventions and support services during both the 2011-12 and 2012-13 school years;

4.      Declare that the District violated the IDEA and denied McCarvel's right of meaningful parental participation by appointing Mahoney as surrogate parent, and that this procedural violation denied C.S. FAPE, in violation of the IDEA, 20 U.S.C. § 1401 *et seq.*;

5.      Declare that the Hearing Officer erred insofar as she failed to order compensatory education for the failure to provide FAPE during the 2012-13 school year and for the inadequate evaluations conducted in 2011 and 2013;

6.      Order the District to provide compensatory education to C.S. by paying the cost of evaluations, specialized instruction, and related services provided by private schools, agencies, and/or professionals selected by McCarvel;

7.      Order the District to provide compensatory education to address the District's failure to conduct adequate evaluations in 2011 and 2013 and provide FAPE during both the 2011-12 and 2012-13 school years, of a type, amount, duration and intensity determined appropriate based on the totality of evidence in the administrative record and any additional evidence presented, but which shall include at a minimum:  1) a comprehensive evaluation that includes psycho-educational assessments to determine C.S.'s specific learning disabilities, a properly conducted FBA, age-appropriate transition assessments and any other assessments needed in the following educational areas: academic, social, behavioral, emotional, speech and language, communication, independent living, self-sufficiency and daily living skills; and 2) special education and related services and supplementary aids and services in an amount, type and duration and of an intensity necessary to address C.S.'s needs and compensate for the denial of FAPE in the following educational areas:  academic, social, behavioral, emotional, speech and language, communication, independent living, self-sufficiency, daily living skills and transition.

8.     Except to the extent the Hearing Officer erred as described herein and as changed circumstances necessitate an increase in compensatory education, affirm the Hearing Officer's Decision;

9.     Declare that Plaintiffs are the prevailing party;

10.    Award Plaintiffs reasonable attorneys' fees and costs in connection with the due process proceeding and this federal court action in an amount to be calculated;

11.    Grant such other and further relief as the evidence supports and as this Court deems just and proper.

Dated this 13th day of March, 2015.


By     /s/ Andrée Larose                    
        Andrée Larose
        MORRISON, SHERWOOD, WILSON & DEOLA, PLLP
        *Attorney for Plaintiffs*